IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHANAN M.[1],

    **Plaintiff,**

v.

    Civil Action 2:23-cv-1678
    Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF
SOCIAL SECURITY,

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Shanan M., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court for on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 8). For the reasons that follow, the Court **REVERSES** the Commissioner of Social Security's nondisability finding and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff protectively filed her application for benefits on August 11, 2020, alleging that she has been disabled since December 13, 2019. (R. at 188-94.) Plaintiff's application was denied initially in November 2020 and upon reconsideration in June 2021. (R. at 71-102.)

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 103-27.) Administrative law judge Noceeba Southern (the "ALJ") held a telephone hearing, on June 16, 2020. (R. at 36-70.) Plaintiff, who was represented by counsel, appeared and testified at the hearing. (*Id.*) A vocational expert ("VE") also appeared and testified. (*Id.*) On July 1, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12-35.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

## II. RELEVANT RECORD EVIDENCE

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's relevant statements to the agency and hearing testimony as follows:

> [Plaintiff] alleges that she is disabled by depression, degenerative disc disease, fibromyalgia, spinal stenosis, osteoarthritis, kyphosis, sacetarthirtis (sic), thoracaic (sic), spondylosis, buldging (sic) disc, spondylolisthesis, trochamteric (sic) bursitis, compound fracture in spine, problems with left knee, lumbar ladiculopathy (sic), cervical dystonia (Exhibit 1E). In an appeal report, she said that was knee MRI showed a Baker's cyst and arthritis, for which she received a steroid injection. EMG showed carpal tunnels syndrome. She was having numbness in her legs, feet, arms and hands. Unable stand longer than 5 minutes, unable to walk long distance or longer than 15 minutes, daily house chores have become cumbersome which plays on my mental state. Unable to function as a "normal" 42 year old such as grocery shopping, cooking dinner, washing dishes, vacuuming the carpet, cleaning bathrooms, standing to fold laundry, etc. I had to pass on our trip to the zoo because I couldn't make the physical walk, I would've needed a wheel chair and I mentally couldn't accept that as an option. Unable to lift anything heavier than a gallon of milk. Unable to sit longer than 30 minutes. Trouble walking up or down steps. Showering has become a difficult task and getting dressed I have to sit. I have to wear a back brace to attempt an activity such as cooking or laundry and even that doesn't take much of the pain away but it does help hold me upright. All physical activities are very difficult for me to do and I have to push myself and take lots of breaks such as weeding out my garden… When I had the EMG on my legs it showed a pinch nerve at my L4 & L5. My doctor increased my Gabapentin from

> 1800 mg's to 2400 mg's. Also my Cymbalta was increased from 60 mgs once a day to 60 mg's twice a day. My antidepressant medication was changed to 60 mgs of Prozac and 10 mgs of Abilify. My daily life has turned gray and depressing because I wake up and live every minute in pain. On a scale of 1 to 10 (1 being no pain & 10 being I'm crying in pain) I sit at a 7 every day. Some days the pain can go down to a 5 but many days I hit a 9 & 10 which makes me frustrated, angry and I start to cry as I cannot finish the task I am working on (cooking, laundry, shopping, etc.). While doing a task I have to take breaks every 5 to 15 minutes depending on what I am doing. My breaks are me sitting for about 3 to 5 minutes with my heating pad on my back then stretching and putting on my back brace. Also my pain increases with bad weather, such as if rain is coming I feel the pressure and it makes me extra achy. My husband is great support, he helps with all the household chores and knows all the trouble and pain I go through with my chronic pain and doctor appointments and so on…(Exhibit 5E).
>
> *** [Plaintiff] testified that she lived in a townhouse with her husband and four-year-old grandson. She has a driver's license, but has some difficulties driving when she needs to look left. She also said her foot numbness is a problem because she can't help how hard she hits the gas pedal. Her husband usually drives her places. She is 5'6" tall and weighs 300 pounds. She has a rolling walker but not a cane. It helps keep her safe so she doesn't fall. The Administrative Law Judge noted that the walker was prescribed postoperatively, and that evidence from [Plaintiff]'s surgeon indicated that she had improved and was overall doing very well. [Plaintiff] said that only reflected her postoperative healing and not her underlying back impairment. She stopped working because she was missing work due to mid back and neck pain, and did not feel she was reliable. [Plaintiff] was prescribed opiate pain medication, gabapentin for neuropathy, a muscle relaxant, and Cymbalta and Prozac for depression. [Plaintiff] said that she [and her] husband cared for her four-year-old grandson. Her husband worked full-time so she was in charge of him during the day. She said she sat and watched him while he rode his bike or played with his friends. He is not in preschool yet. She was able to fold laundry while seated on the couch with the basket between her legs. She was asked if she had to bend to get laundry out of the basket. But stated that she sometimes had to let the folding set a little while before finishing.

(R. at 21-22.)

### B. Relevant Medical Records

As relevant to the discussion below, the ALJ summarized the medical records as to Plaintiff's physical impairments as follows:

Cervical spine x-rays in October 2019 showed minimal degenerative disc disease at C6-C7, and was otherwise unremarkable with disc heights well maintained and widely patent neural foramina (Exhibit 2F/26).

Treatment notes from pain management provider Felicia Ciamacco, PA, in December 2019, the month [Plaintiff] alleges she became disabled, show that [Plaintiff] was observed to ambulate with normal non-antalgic gait, using no assistive device. There was no evidence of atrophy or spasticity. There was tenderness to palpation in the cervical and lumbar facets, which limited active range of motion in the lumbar spine. She was diagnosed with lumbar radiculopathy and spondylolisthesis of L4 on L5, cervical spondylolysis and disc degeneration. [Plaintiff] was 5'6" tall and weighed 253 pounds. This is consistent with a BMI of 41, in the range from morbid obesity. She received a cervical medial branch line for pain management, with a positive diagnostic response (Exhibit 1F/1-4). In January 2020, was also noted to have decreased range of motion in the left hip joint, which was tender to palpation. She continued to have a normal nonantalgic gait and tenderness in the thoracic facets. She apparently had undergone radiology as she was noted to have a collapsed thoracic vertebra. She continued to ambulate with a normal nonantalgic gait pattern using no assistive device (Id., at 111-118).

Polysomnogram in March 2020 showed mild obstructive sleep apnea significant hypoxemia and heart rate variability. A trial of positive airway pressure was recommended (Exhibit 2F/45).

\*\*\*

[Plaintiff]'s pain management physician diagnosed chronic pain and lumbar post laminectomy syndrome, based on [Plaintiff]'s report of her condition. She continued to prescribed opiate pain medication, while noting in January, March, April, May, June, July, August, September, October, November, and December 2021, January, and February 2022 and December and November 2020, that [Plaintiff] was alert, pleasant, and no acute distress, and ambulated with a normal nonantalgic gait pattern using no assistive device. There was no evidence of atrophy or spasticity, the spine was in normal alignment, and there was normal range of motion in her joints. [Plaintiff] had a normal mood and affect was alert, oriented, and cooperative, and displayed good insight judgement (Exhibits 7F and 17F).

4

>Radiofrequency ablation was performed at the right T8-T10 levels in October 2020 (Exhibit 1F/75). MRI of the left knee November 2020 showed no meniscal tear, although there was mild degeneration of the medial meniscus. There was mild compartment degenerative arthrosis and a large Baker's cyst with evidence of a partial rupture/leak (Exhibit 6F/5). Lumbar MRI showed fusion hardware but no central spinal stenosis at any level. There was a grade 1 (mild) and rootlessness is of L4 on L5 due to facet arthropathy, with mild left neural foraminal narrowing. There was also minimal noncompressible disc bulge at T12-L1 (Id.).
>
>Electromyogram in March 2021 showed electrodiagnostic evidence of bilateral mild carpal tunnel syndrome. There was no evidence of cervical radiculopathy (Exhibit 12F/1).

(R. at 22-24.)

### III. ADMINISTRATIVE DECISION

On July 1, 2022, the ALJ issued her decision. (R. at 12-35.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (R. at 18.) Then, at step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 13, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: post-

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

laminectomy, obesity, DDD, degenerative joint disease of the left knee, spondylolisthesis, fibromyalgia, depression, hypertension, posttraumatic stress disorder, headaches. (*Id.*)  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently push and pull with both lower extremities. [Plaintiff] can occasionally stoop, kneel, crouch, and climb ramps or stairs. She should avoid climbing ladders, ropes, or scaffolds. [Plaintiff] can occasionally twist and bend at the waist. She should avoid concentrated exposure to heat, cold, and vibration. She is able to perform simple repetitive tasks with few detailed instructions. She can adapt to occasional changes and occasional decision-making in static work environment, with changes well explained. [Plaintiff] can stand and walk for up to four hours and sit for up to six hours in an eight hour workday. She can change from sitting to standing every hour for 3-4 min. She should avoid crawling. She can frequently (sic) with both upper extremities.

 (R. at 20.)

At step four of the sequential process, relying on the VE's testimony, the ALJ determined that Plaintiff is unable to perform her past relevant work as an accounting clerk, server, or dishwasher. (R. at 28.)  Further relying on the VE's testimony, the ALJ concluded at Step 5, that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a ticketer, ticket taker, or storage rental clerk.  (R. at 28-29.)  She therefore concluded that Plaintiff has not been disabled since December 13, 2019.  (R. at 29.)

6

### IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff raises three claimed errors: (1) the ALJ erred in her analysis of the opinions of treating physicians Drs. White and Muthuri as they relate to her physical abilities; (2) the ALJ erred in her assessment of Plaintiff's mental impairments; and (3) the ALJ's RFC formulation relating to physical limitations is not supported by substantial evidence. As discussed below, the Court finds Plaintiff's first statement of error to be well taken. This finding obviates the need for an in-depth analysis of the remaining issues. Thus, the Court needs not, and does not, resolve the alternative bases that Plaintiff contends support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's other arguments if appropriate.

The Court's analysis begins with a discussion of the regulations governing the ALJ's consideration of medical opinions. Because Plaintiff filed her application after March 27, 2017, it is governed by the relatively new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A claimant's RFC is an assessment of "the most [a claimant] can still do despite her limitations." 20 C.F.R. § 404.1545(a)(1) (2012). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history,

8

clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4). "Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

\* \* \*

> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>> (i) The existence and severity of your impairment(s);
>>
>> (ii) The existence and severity of your symptoms;
>>
>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .

9

>> (v) . . . your residual functional capacity;
>
> (vi) Whether your impairment(s) meets the duration requirement; and
>
> (vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but

10

are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-

11

March 27, 2017 regulations)).

Turning first to the ALJ's consideration of Dr. Muthuri's opinion, Plaintiff argues that the ALJ did not address the consistency factor and gave only cursory consideration to the supportability factor. The ALJ discussed Dr. Muthuri's medical source opinion, as it relates to Plaintiff's physical impairments, in this way:

> Dr. Muthuri also completed a residual functional capacity on which she noted [Plaintiff] had lumbar degenerative disc disease (Exhibit 10F). She endorsed selections indicating that [Plaintiff] could sit for three hours a day with 30 minutes rest every 2 to 3 hours, he could stand for one hour a day with 10 minutes rest every 10, and walk for one hour a day with 30 minutes rest. Of note, since [Plaintiff] alleged she was dependent on a walker for ambulation, Dr. Muthuri endorsed a selection indicating that [Plaintiff] did not use a cane or assistive device while standing or walking. She estimated that [Plaintiff] could lift and carry up to 20 pounds occasionally and 10 pounds frequently, could bend occasionally, could never squat, crawl, or climb, and would frequently be unable to maintain attention and concentration for simple work tasks. Dr. Muthuri's extreme assessment is not consistent with treatment notes from the examination on the day the assessment form was completed, showing an entirely normal examination except for tenderness to palpation over the lumbosacral spine. [Plaintiff] denied muscle aches, joint aches, headache, anxiety, and depression (Exhibit 14F/1-5). The objective evidence does not is not persuasive as it does not support Dr. Muthuri's very conservative residual functional capacity.

(R. at 26-27).

Plaintiff similarly argues that the ALJ did not appropriately consider Dr. White's opinion. The ALJ discussed Dr. White's opinion as follows:

> [Plaintiff] received an L4-L5 fusion with discectomy and hardware, in April 2020 (Exhibit 2F/57-59). Preoperatively, despite pain, [Plaintiff] insisted that she is able to ambulate unassisted, including stairs and perform all activities of daily living independently (Exhibit 6F/21). Postoperatively she denied weakness or neurogenic bowel or bladder symptoms. She was able to ambulate unassisted wearing her LSL brace. There was mild superficial incisional tenderness. Strength and sensory exams were intact. X-rays showed excellent restoration of disc height, sagittal balance, and lordosis. She appeared to be healing quite nicely (Exhibit 2F at 28). In September 2020, [Plaintiff] continued to deny significant postoperative leg pain or

12

> paresthesias. The biggest issue that there was her left knee, which she had long-standing problems with due to playing softball in high school and college. X-rays showed old thoracic compression fractures which is stable but caused a slight cathodic deformity. Her surgeon [Dr. White] advised that she not return to any type of employment that requires a lot of repetitive lifting, twisting, or bending. He noted that she may not even be able to sit for prolonged periods and may be seen by a disability physician for determination of disability. With respect to her lumbar spine, she was considered ready to wean out of her LSO brace (Exhibit 4F). This opinion is not persuasive with respect to [Plaintiff]'s abilities and limitations, as the doctor did indicate the most [Plaintiff] was able to do despite her impairments. He did not support his opinion with any abnormal objective clinical findings, other than noting a good recovery from her back surgery and a long-standing thoracic compression fracture, with no noted complaints of thoracic spine symptoms.

(R. at 23.)

As the above excerpts reveal, the ALJ provided minimal explanation for the weight she assigned to each of these opinions. Indeed, as Plaintiff rightly points out, in considering both Dr. Muthuri's and Dr. White's opinions, the ALJ did not discuss the issue of consistency at all. Indeed, with respect to Dr. Muthuri's opinions, the ALJ seems to have confused the issues of supportability and consistency in referring to Dr. Muthuri's own treatment notes from the date of her assessment of Plaintiff. (R. at 27 citing R. at 679-683; *see also* R. at 608.) Without question, "[c]onsistency and supportability are separate inquiries," and simply discussing one does not satisfy the requirement that an ALJ also evaluate, and articulate, the other. *Amy B. v. Comm'r of Soc. Sec.,* No. 1:22-CV-00486-TPK, 2023 WL 2445306, at *4 (S.D. Ohio Mar. 10, 2023).

Further, "if nothing else, [] an ALJ must consider the entirety of the evidence, and not just the results of one or two isolated records," in determining these issues. *Amy B.,* 2023 WL 2445306, at *4. Here, in her discussion of Dr. Muthuri's opinion in particular, the ALJ gives no indication that she considered anything beyond a few of the opining physicians' own findings. And, with respect to Dr. White's opinion, the ALJ's discussion is buried at the bottom of a

13

paragraph setting forth various findings but with no attempt at connecting those findings to a conclusion regarding consistency. This type of cursory articulation simply is not sufficient to satisfy the ALJ's obligation to assure the claimant and a reviewing court that the ALJ applied these factors as contemplated by the governing law. *Amanda B. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-4209, 2024 WL 278160, at *4 (S.D. Ohio Jan. 25, 2024). That is, in the absence of the ALJ's proper articulation, the Court cannot trace the ALJ's path of reasoning. *Id.* (citing *Charles K. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5111, 2022 WL 1044722, at *6 (S.D. Ohio Apr. 25, 2022) ("Given the ALJ's ... unexplained conclusions as to supportability and consistency, the undersigned cannot trace the ALJ's path of reasoning.")).

In the face of this, the Commissioner argues that the ALJ identified elsewhere in her decision a host of mostly normal examination findings relating to Plaintiff's physical impairments. The Commissioner's *post hoc* rationalizations, however, cannot be used to justify the ALJ's failure to follow the regulations. It is the job of the ALJ in the first instance to articulate their reasons. *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021). Indeed, it is the obligation of the ALJ "in the first instance to show his or her work*, i.e.*, to explain in detail *how the factors actually were applied* in each case, to each medical source." *Id.* As such, by not explaining how she considered the factor of consistency when evaluating these medical opinions, the ALJ failed to meet the minimum levels of articulation required by the regulations. And, as a result, the Court's ability to determine whether the ALJ's conclusions were supported by substantial evidence has been frustrated. *Amanda B*, 2024 WL 278160, at *5. Accordingly, this claim of error is well-taken and a remand is justified.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 9) is **SUSTAINED.** The decision of the Commissioner is therefore **REVERSED** and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

| | |
|---|---|
| **Date:** <u>**August 9, 2024**</u> | <u>*/s/ Elizabeth A. Preston Deavers*</u><br>**ELIZABETH A. PRESTON DEAVERS**<br>**UNITED STATES MAGISTRATE JUDGE** |